UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-60168-CIV-SIMONTON
CONSENT CASE

JAMES WIILIAMS,

    Plaintiff,

v.

R.W. CANNON, INC., et al.,

    Defendants.
_____/

**ORDER DENYING DEFENDANTS' MOTION FOR NEW TRIAL,
MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND
MOTION FOR REMITTITUR**

Presently pending before the Court is Defendants' Motion for New Trial, Motion for Judgment Notwithstanding the Verdict and Motion for Remittitur (DE # 147).  Plaintiff filed a response (DE # 148); and, although the time to file a reply expired on April 13, 2009, none has been filed to date.  This case is referred to the undersigned Magistrate Judge based upon the consent of the parties (DE # 109).  Based upon a careful review of the record and for the reasons stated herein, Defendants' motion is DENIED.

    I.    <u>BACKGROUND</u>

This is an action for overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*  On March 13, 2009, following a five-day jury trial, this Court entered a final judgment in favor of Plaintiff for $18,190.84, based upon the jury's finding that Plaintiff incurred $9,095.42 in actual damages based on Defendants' violation of the FLSA, as well as the jury's finding that Defendants acted knowingly or in reckless disregard of their obligations under the FLSA, resulting in an award of liquidated damages equal to the amount of actual damages (DE # 146).

Defendants then filed the instant motion in which they request that the Court vacate the judgment or, alternatively, reduce the amount of the verdict. Defendants' motion is approximately two pages long; they do not cite any legal authority to support their positions; they do not set forth the specific factual basis underlying their claims; and, they do not tie their allegations of trial errors with the particular relief they seek. In sum, all of Defendants arguments are unavailing, as explained below.

## II. LEGAL FRAMEWORK FOR ANALYSIS

### A. Judgment as a Matter of Law

The entry of a judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) is appropriate if there is "no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party." *Optimum Technologies, Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1251 (11th Cir. 2007). In making the determination, the Court's analysis must be "squarely and narrowly focused on the sufficiency of the evidence." *Id.* at 1251-52 (quoting *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007)). "The jury's findings should therefore be excluded from the decision-making calculus on a Rule 50(b) motion, other than to ask whether there was sufficient evidence, as a legal matter, from which a reasonable jury could find for the" prevailing party. *Chaney*, 483 F.3d at 1228. In sum, the result reached by the jury "must be left intact if there is evidence from which [it] could have resolved the matter the way it did." *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1264 (11th Cir. 2008). In other words, the moving party has not met its burden simply by showing that there was sufficient evidence that the jury could have found in its favor; rather, it must show that the jury could not possibly have found in favor of the non-moving party. *See id.* Finally, all evidence and inferences must be drawn in favor of the non-moving party. *See Viart v. Bull Motors, Inc.*, 149 F. Supp. 2d 1346, 1347 (S.D. Fla. 2001).

B.     New Trial

As an alternative to entering a judgment as a matter of law, the Federal Rules provide that the Court may grant a new trial after a jury trial on all or some of the issues "for any reason for which a new trial is heretofore been granted in federal court." Fed. R. Civ. P. 59(a). "[M]otions for a new trial are committed to the discretion of the trial court." *Montgomery v. Noga*, 168 F.3d 1282, 1295 (11th Cir. 1999); *accord Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1447 (11th Cir. 1985). And, the reasons justifying such relief include "a verdict which is against the weight of the evidence, substantial errors in the admission or rejection of evidence, and improper opening statements or closing arguments." *Rosa v. City of Fort Myers*, No. 2:05-cv-481-FtM-295SPC, 2008 WL 398975, at *2 (M.D. Fla. Feb. 12, 2008) (citations omitted). "Because it is critical that a judge does not merely substitute his judgment for that of the jury, 'new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great – not merely the greater – weight of the evidence.'" *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001) (quoting *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984)).

C.     Remittitur

Finally, where the jury properly determined liability, but the jury's award "exceeds the amount established by the evidence," the appropriate remedy is "a remittitur order reducing a jury's award to the outer limit of the proof," *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1448 (11th Cir. 1985), or alternatively, to conduct "a new trial exclusively as to damages." *Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1242 (11th Cir. 2008). Although "a new trial should be ordered only where the verdict is so excessive as to shock the conscience of the court," *Goldstein*, 758 F.2d at 1447, "the standard for remittitur is . . . that it 'is the appropriate remedy where the jury's damage

award exceeds the amount established by the evidence.'" *Moses v. K-Mart Corp.*, 905 F. Supp. 1054, 1057 (S.D. Fla. 1995) (quoting *Goldstein*, 758 F.2d at 1448). In such cases, "the Court is bound to allow Plaintiffs the maximum possible recovery," keeping in mind that "the Court is not to substitute its judgment for the jury's, and where there is sufficient evidence in the record to support the award, the Court should not reduce merely because it would have found differently." *Id.*

### III.   LIABILITY AND ACTUAL DAMAGES

For the reasons stated below, the undersigned finds that the evidence in the record supported the jury's finding that Defendants failed to pay Plaintiff overtime wages as required under the FLSA; and, that Plaintiff is therefore entitled to $9,095.42 in actual damages.

#### A.   The Parties' Positions

Defendants' first argument, in its entirety, is that:

> no reasonable person could have arrived at the verdict arrived at by the jury since Plaintiff did not prove by a preponderance of the evidence that he worked any overtime for which he was not paid by Defendants. The [Plaintiff] was unable to testify with any specificity as to the number of hours he worked overtime and [Defendants'] witnesses specifically showed that [Plaintiff's] testimony was fabricated. Moreover, Defendants['] witnesses specifically controverted the testimony of Plaintiff as to the hours he claimed to have worked and whether or not he left the premises for lunch

(DE # 147 at 1-2).

Plaintiff responds that the jury's verdict is supported by the evidence in the record, including Defendant Robert W. Cannon's deposition testimony; Plaintiff's pay stubs; and, the testimony of Joel Morales, who worked with Plaintiff and carpooled to work with him (DE # 148 at 5-7).

**B.     Analysis**

The undersigned concludes that there is no basis to enter a judgment as a matter of law pursuant to Rule 50, to order a new trial pursuant to Rule 59, or to issue a remittitur to reduce the amount of Plaintiff's recovery because the jury's verdict as to liability and actual damages was consistent with the weight of the evidence in the record.

As stated above, Defendants have neither cited any legal authority in support of their position, nor have they identified any specific evidence to illustrate their assertions that the jury verdict was unreasonable on the grounds that (1) Plaintiff did not prove that he was not paid overtime hours; (2) Plaintiff did not specify the number of hours he worked; and, (3) Plaintiff's testimony regarding the hours worked was controverted by other evidence in this case. The Court will address each element of Defendants' argument in turn below.

**1.     Plaintiff Proved That He Was Not Paid Overtime Hours**

The evidence supporting Plaintiff's claim includes Plaintiff's testimony that, when he was hired, he was told that his yearly salary was intended to compensate him for working between 8:00 a.m. and 5:30 p.m. with a one hour lunch break, but he was nevertheless ordered to arrive at work between 7:00 a.m. and 7:30 a.m.; that he was required to work approximately 16-25 hours on Saturdays over the course of his employment; that he did not receive lunch breaks on some weeks; and, that Defendants fired one of Plaintiff's co-workers, which required Plaintiff to work extra hours.[1]  In

---

[1] This evidence includes not only the testimony offered by Plaintiff himself, but, as Plaintiff points out in his response in opposition to the instant motion, the deposition testimony of Defendant Robert W. Cannon, which was read to the jury, as well as the in-court testimony of Plaintiff's co-worker, Joel Morales.

addition, the testimony of Joel Morales, Plaintiff's co-worker who also carpooled with him to work, bolstered Plaintiff's testimony that he arrived at work early and worked through lunch on occasion. Moreover, Plaintiff submitted his pay stubs, which contained contemporaneous notations regarding his overtime hours.

It is well settled that "'[t]he right to determine the credibility of witnesses lies at the core of the jury's factfinding function;'" and, therefore, "[i]f there is conflicting testimony on a material issue, the court may not grant judgment as a matter of law simply because it believes one witness and does not believe another." 9B Wright & Miller Federal Practice and Procedure: Civil 3d § 2527 at 440-41 (2008) (quoting *Battle v. United Parcel Servs., Inc.*, 438 F.3d 856, 862 (8th Cir. 2006)); *accord Ash v. Tyson Foods, Inc.*, 190 Fed. Appx. 924 (11th Cir. 2006); *Walls v. Button Gwinnett Bancorp., Inc.*, 1 F.3d 1198, 1200-01 (11th Cir. 1993).

Where, as here, Plaintiff has introduced competent evidence to support his claim that he worked overtime hours without pay, the jury was free to credit Plaintiff's evidence over the Defendants' evidence, notwithstanding Defendants' insistence that their "witnesses specifically controverted the testimony of Plaintiff as to the hours he claimed to have worked and whether or not he left the premises for lunch" (DE # 147 at 2). *See Moon v. Technodent Nat'l, Inc.*, No. 5:06-cv-358-Orl-PCF-GRJ, 2008 WL 2117053, at *2-3 (M.D. Fla. May 19, 2008) (denying defendant's post-trial motion for judgment as a matter of law on the grounds that the jury was required to "infer that she worked overtime," because an "employee's initial burden of production is minimal, and as a result, 'self-serving' testimony is sufficient to establish a prima facie case" and because "it is perfectly acceptable to ask the jury to 'infer' the extent of the employee's overtime work."); *id.* at *6 (denying defendant's post-trial motion for remittitur, noting that the

employee "was not required to present time cards or corroborating testimony.").

In sum, there is no basis to enter a directed verdict or to order a new trial on this issue.

### 2. Plaintiff Was Not Required to Specify the Exact Hours He Worked

Defendants' insistence that Plaintiff "was unable to testify with any specificity as to the number of hours he worked overtime" (DE # 147 at 2) is of no moment here, because the jury was permitted to find that Plaintiff sustained his burden of proof by producing "sufficient evidence to show the amount and extent of th[e] work [performed] as a matter of just and reasonable inference;" and, absent Defendants' production of "evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the Plaintiff's evidence," Plaintiff is entitled to an award of damages "even though the result be only approximate." *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 471 (11th Cir. 1982); *accord Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1267 (11th Cir. 2008) (recognizing that "the jury had to make approximations and estimates in order to arrive at a damages verdict because [defendant] did not maintain payroll records"); *Moon, supra,* at *3. This argument was previously raised by Defendants and rejected by the District Court in its Order on Summary Judgment (DE # 100 at 31) (citing *Brock v. Norman's Country Market, Inc.*, 835 F.2d 823, 828 (11th Cir. 1988)). Thus, it is not necessary to enter a judgment as a matter of law, nor is it necessary to grant a new trial.

Moreover, the evidence of the number of unpaid overtime hours Plaintiff worked supports the jury's verdict, meaning that a remittitur is not necessary to reduce the amount of Plaintiff's recovery in this case in order bring the amount of actual damages awarded in line with the evidence presented. The jury found that Plaintiff's $30,000.00

7

yearly salary was intended to compensate him for 40 hours of work per week; that Plaintiff worked 119 overtime hours between January 16, 2005 and January 15, 2006 for which he received no compensation; and, that Plaintiff worked 301.5 overtime hours between January 16, 2006 and December 1, 2007 for which he received no compensation (DE # 134). These findings are consistent with the evidence in this case, including Plaintiff's testimony regarding the number of hours per week that his salary was intended to compensate, as well as the testimony of Plaintiff and Joel Morales indicating that Plaintiff was ordered to arrive at the warehouse early, to work during his lunch breaks and to work occasionally on Saturdays, resulting in approximately 2 hours of overtime per week in the 50 weeks between January 16, 2005 and January 15, 2006 and approximately 3 hours of overtime per week in the 90 weeks between January 16, 2006 and December 1, 2007. *See Allen v. Board of Public Education for Bibb County*, 495 F.3d 1306, 1317 (11th Cir. 2007) ("Plaintiffs may ultimately be permitted to show the amount and extent of their unpaid overtime as a matter of just and reasonable inference based on facts such as" Plaintiffs' testimony and the testimony of witnesses who observed Plaintiffs at work during overtime hours).

       3.    <u>**Defendants' Conflicting Evidence Does Not Warrant the Relief Sought**</u>

Although Defendants offered conflicting testimony and evidence, there was a sufficient basis in the record to permit a jury verdict in Plaintiff's favor, which precludes the entry of a judgment as a matter of law, regardless of whether Defendants' evidence could have supported a contrary result. *See Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1264-65 (11th Cir. 2008) ("The issue" on a motion for a judgment as a matter of law "is not whether the evidence was sufficient for [the moving party] to have won, but whether the evidence was sufficient for it to have lost.").

While a new trial may be granted pursuant to Federal Rule of Civil Procedure 59 "for any reason for which a new trial is heretofore been granted in federal court," Fed. R. Civ. P. 59(a), Defendants did not set forth any particular reason to grant a new trial. The undersigned finds that the jury verdict does not stand against "the great . . . weight of the evidence" *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001) (quoting *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984)); and, indeed, the undersigned finds that the jury's verdict was fully consistent with the evidence presented at trial. For instance, the evidence showed that although Plaintiff was told he was being hired to work between 8:00 a.m. and 5:30 p.m. with a one hour lunch break, he was nevertheless required on at least some occasions to arrive early, work during lunch and work during the weekends. Neither the quantity nor the quality of the contrary evidence introduced by Defendants merits a new trial.

IV.   **LIQUIDATED DAMAGES**

A.   **The Parties' Positions**

Defendants' second argument, in its entirety, is that,

> contrary to the findings of the jury, there was no substantial evidence to support a finding that Defendants acted willfully to violate the FLSA. To the contrary, the evidence showed that Mr. Cannon consulted with an attorney after the filing of a lawsuit by Mariano Soliz and instituted a time sheet/time card system with which Mr. Williams refused to comply. There was absolutely no evidence to support that the Defendants [*sic*] willfully and intentionally violated the FLSA and therefore that portion of the verdict must be vacated by this Court. Similarly, if that portion of the verdict is vacated, Defendants would ask this Court to vacate its prior ruling in favor of awarding the Plaintiff liquidated damages

(DE # 147 at 2).

Plaintiff responds by citing this Court's Order granting Plaintiff's Motion for Liquidated Damages, in which it found that the jury's verdict regarding the willfulness of

Defendants' breach of the FLSA "was supported by, among other things, the FLSA poster displayed in the workplace; the fact that a prior employee complained about not being paid overtime wages, and the lack of remedial measures Defendants took in response; Defendants' failure to seek professional advice regarding the payment of overtime wages; and Defendants' practice of ordering food to encourage their employees to eat while working" (DE # 145).[2]

**B.     Analysis**

As discussed above, both Plaintiff and Defendants had the opportunity to present evidence to the jury regarding Defendants' knowledge of their obligations under the FLSA; and, the jury ultimately concluded that Defendants willfully or recklessly failed to pay Plaintiff overtime wages as required by law.  The fact that the jury credited Plaintiff's theory of the case when it conflicted with Defendants' theory of the case does not justify the entry of a judgment as a matter of law, a new trial on the issue of liquidated damages, or a remittitur.

Defendants' main argument in this regard is that no reasonable factfinder could conclude that they willfully violated the FLSA because they instituted a time card system following an FLSA lawsuit instituted by another employee; and, Plaintiff failed to comply with this system.  Thus, the upshot of Defendants' argument is that they were aware of the applicability of the FLSA, but unaware that Plaintiff was accumulating overtime hours.

---

[2]     Plaintiff points out that, although Defendants claim that they consulted with an attorney following Mr. Soliz's lawsuit, the jury was read Defendant Williams' deposition testimony in which he stated that he did not "ever seek any professional advice concerning whether it is appropriate to pay Mr. Williams in the manner that he was paid" (DE # 148 at 5).

**10**

**In this regard, Defendants seem to have conflated the question of whether they knew or should have known that Plaintiff was working overtime (i.e., whether Plaintiff was "employed" during the overtime hours that he worked) with the question of whether Defendants knew or showed willful disregard about whether the FLSA required them to pay overtime wages to Plaintiff (i.e., whether liquidated damages are appropriate).** *See Reich v. Dep't of Conservation and Natural Resources*, **28 F.3d 1076, 1081-82 (11th Cir. 1994) (defining the term "employ" under the FLSA as "to suffer or permit to work," which requires the employer to have actual or constructive knowledge that the employee is working overtime hours).**

**Thus, Defendants' central argument appears to be inadvertently focused on the question of whether Plaintiff was "employed" during the overtime hours that he worked, and not on whether Defendants were aware of their obligations under the FLSA. The undersigned finds that in answering this first question, the jury could reasonably find that Defendants were aware of the fact that Plaintiff was working overtime hours. Even assuming that Plaintiff failed to comply with the time card system, there was evidence in the record to suggest that Defendants were nevertheless aware that their employees, including Plaintiff, worked overtime hours, and, indeed, that Defendants encouraged them to do so.**

**By focusing on the wrong issue, Defendants' argument inadvertently bolsters** *Plaintiff's* **claim that Defendants knew that their conduct was proscribed by the FLSA, since they emphasize that they installed a time card system because they were previously sued for unpaid overtime wages by one of Plaintiff's similarly situated co-workers. On these facts, the jury was justified in finding that Defendants were aware of their obligations to pay overtime wages under the FLSA. The fact that Defendants**

11

instituted a timecard system does not preclude the jury from finding, as it did, that Defendants willfully or recklessly failed to comply with the FLSA. The jury could conclude that Defendants' institution of a time card system following a prior FLSA lawsuit was not an adequate remedy to address their non-compliance with the FLSA. The jury could also reasonably conclude that Defendants were aware that Plaintiff was not complying with their time card system; that they were aware that Plaintiff was working overtime hours; and, that they were aware that they were not paying Plaintiff for those overtime hours in accordance with their obligations under the FLSA.

V.     **JURY CONFUSION**

A.     **The Parties' Positions**

Defendants' third and final argument states, in its entirety, that "the verdict must be vacated because the jury instructions used by this Court were confusing and l[e]d the jury to an erroneous verdict as is evidenced by the fact that this Court sent the jury back into the jury room to recalculate its verdict" (DE # 147 at 2).

Plaintiff responds by stating, *first*, that Defendants "motion is facially insufficient to permit any meaningful review of any alleged error or to identify that any error actually occurred" because it "does not state what instruction was alleged to be confusing . . . or [how it] resulted in an incorrect award" (DE # 148 at 3); *second*, that Defendants either waived their right to demand a new trial or invited the error of which they now complain because, after the jury returned its initial verdict and Defendants objected to the procedures the Court intended to use to re-instruct the jury, Defendants declined the Court's invitation to move for a mistrial at that juncture; and, *third*, that any error present in the initial instructions were cured by the Court's subsequent instructions to the jury, which correctly stated the law and resulted in a verdict supported by the evidence (DE #

**12**

148 at 3-4).

  B. <u>Legal Framework for Analysis</u>

"In determining whether a jury charge was confusing, misleading, or prejudicial, the test is not whether the charge was faultless in every particular, but whether the jury was misled in any way and whether it understood the issues and its duty to determine those issues." *Wright v. Wagner*, 641 F.2d 239, 242 n.4 (5th Cir. 1981).[3] The Court retains "broad discretion in formulating jury instructions." *Christopher v. Cutter Laboratories*, 53 F.3d 1184, 1190 (11th Cir. 1995). And, "[t]o warrant a new trial based on an erroneous instruction, 'a party must establish that [a] challenged instruction was an incorrect statement of the law, and that it was probably responsible for an incorrect verdict leading to substantial injustice.'" *Johnson v. Clark*, 484 F. Supp. 2d 1242, 1252 (M.D. Fla. 2007) (alteration in original) (quoting *Busch v. County of Volusia*, 189 F.R.D. 687, 695-96 (M.D. Fla. 1999)). "Motions for new trial on the basis of erroneous instructions are committed to the discretion of the trial court." *Cristopher*, 53 F.3d at 1190. Because "[i]t is difficult if not impossible to decipher what calculations the jury made to arrive at its verdict . . . a party seeking to challenge the jury verdict bears a high burden to overcome." *State Contracting & Eng'g Corp. v. Condotte America, Inc.*, No. 97-7014-CIV, 2002 WL 34365827, at *2 (S.D. Fla. June 26, 2002).

  C. <u>Analysis</u>

As stated above, this was a case in which the actual damages award was permitted to be approximate due to the lack of adequate time records detailing the

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions handed down by the Fifth Circuit prior to October 1, 1981.

**13**

amount of hours worked by Plaintiff.  Defendants do not state the exact manner of the jury's purported confusion in this case, but appear to rely on the fact that the jury initially returned a verdict form that contained two manifest errors.

At the outset, the undersigned notes that Defendants have failed to satisfy its burden of showing that a new trial is necessary to correct an "incorrect statement of the law" that was contained in the jury instructions.  *Johnson*, 484 F. Supp. 2d 1242 at 1252.  Indeed, Defendants have not identified *any* instruction, erroneous or otherwise, that they claim was either improper or misleading.  Even if it is assumed that the jury was given an erroneous instruction, there is no basis to grant Defendants the relief they seek.

The verdict form asked the jury to find, *inter alia,* (a) the number of hours per week that Plaintiff's salary was intended to compensate; (b) the number of "hours in excess of 40 hours per week" for which Plaintiff worked and received only his regular rate of pay; and, (c) the number of "hours in excess of 40 hours per week" for which Plaintiff worked and received no pay at all (DE # 134).  The jury initially returned the verdict form with two manifest errors:  The first error is that the jury determined that Plaintiff's salary was intended to compensate him for 40 hours of work per week, while at the same time finding that he worked some overtime hours for which he received only his regular rate of pay.  This is impossible, because the only way that Plaintiff could have worked overtime and received only his regular rate of pay is if his salary was intended to compensate him for more than 40 hours of work per week.  The second error is that the jury's initial verdict reflected the average number of overtime hours that Plaintiff worked per week, rather than providing the total number of overtime hours that Plaintiff worked

14

during the relevant periods.[4]

When the Court polled the jury, a number of the jurors responded that the verdict which was announced did not accurately reflect the verdict. Thus, the Court ordered the jury to resume its deliberations; and, the jury subsequently asked the Court to clarify the jury instructions by specifying whether their verdict should provide the weekly average of Plaintiff's overtime hours, or a total of all the overtime hours that Plaintiff worked during the relevant period.

Defendants objected to responding to the jury's request for a clarifying instruction, but expressly declined the Court's invitation to move for a mistrial. Defendants argued at the time that the initial verdict form was proper because it contained responses to each of the questions; and, they further argued that the only remedies for internally inconsistent or non-sensical responses on the jury form must be reached through the filing of post-trial motions.

The Court overruled Defendants' objection, and responded that the verdict form sought the total number of overtime hours that Plaintiff worked, not an average per week. The Court also explained to the jury the internal inconsistency in its simultaneous findings (1) that Plaintiff's salary was intended to compensate him for 40 hours per week and (2) that Plaintiff worked overtime hours and received only his regular rate of pay. The Court noted that the only way in which Plaintiff could have received straight time pay for overtime hours is if his salary was intended to compensate him for more than 40

---

[4] This was apparent based upon the fact that the total number of hours was unreasonably low and the fact that the number of hours was identified with an unreasonable level of precision, out to two decimal places. The evidence did not support a verdict that was either as low or as precise as the one initially returned by the jury.

15

hours per week.

After providing the jury with the clarifying instructions, the substance of which was approved by both parties,[5] the jury returned a verdict that was free of the inconsistencies and errors contained in its initial verdict.

Of course, the fact that the jury returned a verdict form with an apparent miscalculation and was ordered to correct it in order to comply with the Court's instructions does not, without more, invalidate the jury's verdict and compel the extraordinary relief sought by Defendants, which would require setting aside the jury's verdict to enter a judgment as a matter of law, ordering a new trial or reducing the jury's award of actual damages. *See, e.g., Saunders v. Chatham County Bd. of Com'rs*, 728 F.2d 1367, 1368 (11th Cir. 1984) (affirming judgment based upon a $20,000 verdict in favor of plaintiff where the jury initially returned a verdict in favor of plaintiff but assessed zero damages).

Moreover, notwithstanding Defendants' assertion to the contrary, the fact that the Court "sent the jury back into the jury room to recalculate its verdict" does not "evidence[ ] the fact" that "the jury instructions used by this Court were confusing and [led] the jury to an erroneous verdict" (DE # 147 at 2). Defendants have not cited any caselaw in support of their position; and, the undersigned concludes that the totality of the circumstances do not indicate that the verdict in this case was the product of a confused jury, because the manifest errors in the initial verdict form were cured after the undersigned provided clarifying instructions that were approved by both parties. Thus,

---

[5] While Defendants did not object to the substance of the clarifying instructions, they did not withdraw their underlying objection to provide any clarifying instructions at all, notwithstanding the fact that the jury returned an internally inconsistent and specifically asked the Court to clarify its instructions.

**16**

based upon a review of the record and for the reasons stated above, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion for New Trial, Motion for Judgment Notwithstanding the Verdict and Motion for Remittitur (DE # 147) is **DENIED**.

**DONE AND ORDERED** in chambers in Miami, Florida on August 27, 2009.

*Andrea M. Simonton*
_____
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

**Copies furnished to:**
**All counsel of record**