## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 08-60168-CIV-UNGARO/SIMONTON
### <u>CONSENT CASE</u>

**JAMES WILLIAMS,**

      **Plaintiff,**

**v.**

**R.W. CANNON, INC., et al.,**

      **Defendants.**

_____/

### <u>OMNIBUS ORDER REGARDING</u>
### <u>PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS</u>

      Presently pending before the Court is Plaintiff's Motion for Attorneys' Fees and Costs (DE # 156), as well as Plaintiff's Motion to Grant the Motion for Attorneys' Fees and Costs by Default (DE # 164) and Plaintiff's Motion to Strike as Untimely the Affidavit filed in connection with Defendants' response to Plaintiff's Motion for Attorneys' Fees and Costs (DE # 169). The Motion for Attorneys' Fees and Costs is fully briefed (DE ## 165, 166); and, the deadline for timely filing additional briefs regarding the remaining pending motions has expired. This case is referred to the undersigned Magistrate Judge based upon the parties' consent (DE # 109). Following a careful review of the record as a whole and for the reasons stated herein, Plaintiff's Motion for Attorneys' Fees and Costs is GRANTED; Plaintiff's Motion to Strike Affidavit is GRANTED; and, Plaintiff's Motion to Grant the Motion for Attorneys' Fees and Costs by Default is DENIED AS MOOT. Plaintiff is entitled to an award of attorneys' fees ($97,796.25), supplemental attorneys' fees ($6,957.50) and costs ($3,506.09) equal to $108,259.84.

I.    **BACKGROUND**

This lawsuit was initially filed in state court before being removed to this Court on February 7, 2008.  In the Complaint, Plaintiff alleges that his employers, the Defendants in this action, failed to pay him overtime wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* (DE # 1).  Following a five-day jury trial, the undersigned issued a Final Judgment in favor of Plaintiff, awarding him a total of $18,190.84, based upon the jury's finding that Plaintiff incurred $9,095.42 in actual damages, as well as the jury's finding that Defendants acted knowingly or in reckless disregard of their obligations under the FLSA, resulting in an award of liquidated damages equal to the amount of actual damages (DE # 146).

In the instant motion for attorneys' fees and costs, Plaintiff requests an award of $125,779.17 in attorneys' fees ($117,142.00) and costs ($8,637.17).  In his reply, Plaintiff also requests an award of $7,845.00 in supplemental attorneys' fees incurred in connection with the underlying motion, which the Court will address separately below.

II.    **ATTORNEYS' FEES**

For the reasons stated below, the undersigned concludes that Plaintiff is entitled to an award of attorneys' fees and costs as the prevailing party; and, that the reasonable value of attorneys' fees equals $97,796.25, not $117,142.00 as requested by Plaintiff.

A.    **Entitlement to Fees**

It is well established that a prevailing FLSA plaintiff is entitled to recover attorneys' fees and costs, based upon the plain language of the FLSA, which provides that "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b); *see also Silva v. Miller*, 547 F. Supp. 2d 1299, 1304 (S.D. Fla.

2008).

Defendants argue that the Court should deny Plaintiff's motion for attorneys' fees and costs because he "failed to comply with the Local Rules by attempting to resolve the fee issue without this Court's intervention" (DE # 165 at 5).

This contention is without merit because Plaintiff's counsel wrote a letter to Defendants' counsel approximately one month prior to filing the instant motion, asking whether "your clients are interested in resolving [Plaintiff's] wage claim without further litigation and the need for a full briefing and hearing on the attorneys' fees and costs motion;" and, requesting a response "by the close of business March 26 if your clients are interested in resolving the claims without further litigation related to collections and a fees motion" (DE # 166, Ex. 1).

The undersigned therefore finds that Plaintiff is entitled to an award of attorneys' fees and costs as the prevailing party in this lawsuit.   *See* 29 U.S.C. § 216(b); *Silva v. Miller*, 547 F. Supp. 2d 1299, 1304 (S.D. Fla. 2008).

B.    The Lodestar Method

Under the lodestar method applied by the Courts in this Circuit, attorneys' fees are calculated by multiplying a reasonable hourly rate by a reasonable number of hours expended.  *See Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387, 1389 (11th Cir. 1997); *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988); *Cuban Museum of Arts & Culture, Inc. v. City of Miami*, 771 F.Supp. 1190, 1191 (S.D. Fla. 1991).  Plaintiff bears the burden of documenting reasonable hours expended and reasonable hourly rates.  *See ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999). Plaintiff must also supply detailed evidence of the hourly rates and time expended so that this Court may properly assess the time claimed for each activity.  *See id*, 168 F.3d

at 427; *Norman*, 836 F.2d at 1303.

      **C.**     <u>**Reasonable Hourly Rates**</u>

            **1.**     <u>**The Parties' Positions**</u>

      **Defendants argue that the hourly rates for Plaintiff's counsel are not reasonable. Specifically, they assert that (1) the billing rate for Jennifer Daley, Esq. should be reduced from $325 per hour to a rate that does not exceed $300 per hour; and, (2) the billing rate for William Amlong, Esq. should be reduced from $450 per hour to a rate that does not exceed $400 per hour (DE # 165 at 5) (citing *Bartle v. RX Options, Inc.*, No. 08-60533-CIV, 2009 WL 1035251, at \*4 (S.D. Fla. Apr. 16, 2009)) (reducing the billing rates requested for Ms. Daley and Mr. Amlong from $325 per hour to $300 per hour and from $450 per hour to $400, respectively, in an FLSA case).**

      **Plaintiff, on the other hand, insists that the hourly rates requested are reasonable and that the Court should not follow *Bartle* because: (1) Plaintiff's expert opined that the $325 and $450 rates are reasonable; (2) the expert's declaration is bolstered by the fact that Ms. Daley and Mr. Amlong have been awarded the $300 and $400 rates as far back as 2005, and that the Court should increase their rates in light of the passage of time; and, (3) Defendants have failed to introduce an expert affidavit to indicate that the requested rates are unreasonably high.  Plaintiff also points out that Defendants do not challenge the hourly rates for associates Jeffrey Botelho, Esq. ($135 per hour), Wendy Dolce, Esq. ($250 per hour), and Rani Nair, Esq. ($175 per hour), nor do they challenge the hourly rates for paralegals Amy Moshier ($85 per hour) and Serena Eifert ($85 per hour).**

    2.    **Legal Standards**

This Court must first determine whether the fee applicant has satisfied the burden of establishing that his requested hourly rates are reasonable.  "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation."  *Norman*, 836 F.2d at 1299.  With respect to the issue of hourly rates, this Court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Id*. at 1303; *accord Tyler v. Westway Automotive Service Ctr., Inc.*, No. 02-61667-CIV, 2005 WL 6148128, at *2 (S.D. Fla. Mar. 10, 2005) (quoting *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994)).

    3.    **Analysis**

Based upon the agreement of the parties and an independent review of the record as a whole, the undersigned finds that a reasonable hourly rate for the following time keepers is: $250 per hour for Ms. Dolce; $135 and $175 per hour for Ms. Nair;[1] $135 per hour for Mr. Botelho; and $85 per hour for the paralegals, Ms. Mosher and Ms. Eifert.

The undersigned finds that a reasonable hourly rate for Ms. Daley is $300 and for Mr. Amlong it is $400.  The reduction in the hourly rates for Ms. Daley and Mr. Amlong is based on a review of the record as a whole, as well as the Court's expertise regarding the prevailing rates for attorneys in this community with a commensurate level of skill, experience and reputation.  The undersigned agrees with the Court's assessment in

---

[1]  The undersigned notes that Ms. Nair billed 0.70 hours of attorney time at $135, before her hourly rate was increased to $175 on or before November 19, 2008.  Ms. Nair billed an additional 92.9 hours after her hourly rate was increased to $175 (DE # 153, Ex. B at 29).

5

*Bartle*, which was issued approximately four months ago – namely, that although Ms. Daley and Mr. Amlong "are skilled attorneys, . . . the requested hourly rates" of $325 for Ms. Daley and $450 for Mr. Amlong are excessive." *See Bartle v. RX Options, Inc., supra*.

      With regard to the cases cited by Plaintiff in his brief, the undersigned concludes that a $400 per hour rate for Mr. Amlong is in line with the general increase in his rates from 1997-1999 (when he was awarded $300 per hour), from 2002-2005 (when he was awarded $350 per hour), and from 2005-2009 (when he was awarded $400 per hour). The undersigned does not find that it is necessary to increase his rates to account for the passage of time between the issuance of this Order and the last two cases in which this Court concluded that $400 was a reasonable hourly rate for Mr. Amlong's participation in an FLSA case. *See id.* (order entered on April 16, 2009); *Bryant v. Big T. East Coast, Inc.*, No. 06-61458-CIV, DE # 83 (order entered on January 14, 2008). Similarly, Ms. Daley was awarded $300 per hour by this Court for her work in FLSA cases in January 2008, *Bryant, supra*, and in April 2009, *Bartle, supra*; and, it is not necessary to increase her rate to account for the short passage of time since those decisions.[2]

     **D.**    <u>**Reasonable Hours Expended**</u>

        **1.**    <u>**The Parties' Positions**</u>

      Defendants next contend that Plaintiff's fee request contains four categories of unreasonable fee requests. First, according to Defendants, "Mr. Amlong undertook no actions in this case, filed no pleadings in this case and appeared for no hearings in this matter;" and, his 12.10 hours of attorney time should therefore "be eliminated

---

    [2] Although Plaintiff suggests that the Court should increase the hourly rates for Ms. Daley and Mr. Amlong because their value of their services have increased since 2005, when they were awarded $300 and $400 per hour, respectively, the undersigned notes that the 2005 litigation took place in state court.

completely from the fee petition since it would be wholly duplicative of any time of Ms. Daley" (DE # 165 at 5).  Second, according to Defendants, "Ms. Eifert's time was merely administrative or clerical;" and, her 1.8 hours of attorney time should therefore be eliminated as well (DE # 165 at 5-6).  Third, Defendants contend that all of the time entries identified as "inter-office conferences between attorneys and staff" is duplicative and should therefore be eliminated (DE # 165 at 6).  Fourth, Defendants contend that any entries that contain "block billing" or reflect tasks completed by more than one attorney should be eliminated (DE # 165 at 6).

Plaintiff replies to each of Defendants' arguments as follows: First, Plaintiff states that Mr. Amlong prepared the complaint, assisted with research and assisted with trial preparation; and, Plaintiff points out that "Defendants have provided no expert testimony that the time claimed for Mr. Amlong is unreasonable" (DE # 166 at 3). Second, Plaintiff states that the 1.8 hours of work performed by Ms. Eifert "included tasks that attorneys would have performed if she did not, such as corresponding with Defendants to coordinate depositions, the joint scheduling report, the pretrial stipulation and settlement" (DE # 166 at 3).  Finally, Plaintiff states that he provided documentation to support his counsel's billing records, together with an expert affidavit confirming that the fees requested are reasonable, and that the Court should disregard Defendants' generalized and unsupported objections regarding inter-office conferences, block billing and duplicative billing (DE # 166 at 3-4).

2.  <u>Legal Standards</u>

Counsel must use "billing judgment" and exclude "excessive, redundant, or otherwise unnecessary" hours from any fee petition, *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983), "irrespective of the skill, reputation or experience of counsel.  *ACLU v.*

7

*Barnes*, 168 F.3d 423, 427 (11th Cir. 1999).  Though the fee applicant bears the initial burden of submitting evidence sufficient to allow the court to confirm that the requested fees are not excessive, "'objections and proof from fee opponents' concerning hours that should be excluded must be specific and 'reasonably precise.'" *Id.* at 428 (quoting *Norman*, 836 F.2d at 1301.

While "secretarial work . . . is not recoverable under an attorney's fee application," *Orenshteyn v. Citrix Sys., Inc.*, 558 F. Supp. 2d 1251, 1259 (S.D. Fla. 2008), work performed by paralegals is recoverable if it is "work that [i]s traditionally performed by an attorney."  *Alter Fin. Corp. v. Citizens and S. Int'l Bank of New Orleans*, 817 F.2d 349, 350 (5th Cir. 1987).

"When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut."  *Bivins v. Wrap it Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (citing *Loranger*, 10 F.3d at 783).

     3.   <u>Analysis</u>

     a.   <u>Hours Billed by Attorney Amlong</u>

The undersigned rejects the notion advanced by Defendants that Mr. Amlong "undertook no actions in this case."  To the contrary, Plaintiff compiled detailed and exhaustive documentation to support his fee petition, which includes separate print-outs of counsel's billing records that are organized by the timekeeper, by chronological order and by the stage in the case in which the fees were incurred.  These records show that, although Mr. Amlong's role in this case was limited, he did indeed participate in the

drafting of the Complaint (DE # 151, Ex. A at 2);[3] and, he helped to coordinate in the preparation for trial (DE # 151 at 5-6).

Nevertheless, the undersigned finds that 12.1 hours of attorney time is excessive given Mr. Amlong's modest role in the case, which is reflected in numerous entries (often in six-minute increments) where he "received and reviewed court papers," without any indication that his doing so was necessary to the prosecution of this matter. As illustrative – but not exhaustive – examples, the undersigned finds that the following entries were either unnecessary or excessive (DE # 151, Ex. A): (1) 0.1 hours on March 3, 2008 to receive and review the Court's Order setting a status conference ; (2) 0.1 hours on March 13, 2008 to receive and review the joint scheduling report; (3) 0.1 hours on April 3, 2008 to receive and review the Court's Order enlarging time for discovery requests; (4) a total of approximately 0.5 hours on April 20, April 27, May 20, June 24 and October 6, 2008 to receive and review the District Court's Orders of referral to the undersigned Magistrate Judge;[4] (5) 0.1 hours on April 21, 2008 to receive and review a notice of deposition; (6) 0.1 hours on June 3, 2008 to receive and review correspondence from the court reporter regarding the readiness of a deposition transcript; (7) 0.1 hours on June 24, 2008 to receive and review the Court's Order setting a hearing; (8) 0.4 hours

[3] The undersigned notes that Plaintiff voluntarily reduced the fee request relating to the time spent by Mr. Amlong in drafting the Complaint by 1.1 hours, to account for the time spent on the discrimination claim (DE # 151, Ex. A at 2).

[4] The undersigned notes that it is not possible to determine the exact amount of time that Mr. Amlong billed on May 20, 2008 to receive and review the Court's Order of referral because it appears in a block billing entry that includes attorney time for receiving and reviewing a "flurry of minor motions and responses and hearing notices" (DE # 151, Ex. A at 4). The same is true for the October 6, 2008 entry, which includes time to receive and review the consent to Magistrate Judge jurisdiction form, an Order setting a telephonic hearing and an Order closing this case on Judge Ungaro's docket (DE # 151, Ex. A at 6).

9

on August 10, 2008 to receive and review a one-page Order granting Defendants' motion for enlargement of time; (9) 0.1 hours on September 6, 2008 to receive and review the Court's Order resetting the pretrial conference; (10) 0.1 hours on October 5, 2008 to receive and review the minutes of the calendar call; (11) 0.1 hours on November 29, 2008 to receive and review the paperless Order resetting the pretrial conference; and (12) 0.1 hours on January 28, 2009 to receive and review the Court's paperless Order granting an enlargement of time to file a reply brief and confer with co-counsel regarding the reply brief, which occurred five days after the untimely reply was filed.

After making all of the necessary reductions, the undersigned concludes that it is appropriate to reduce the amount of time billed for Mr. Amlong from 12.1 hours to 8 hours.

        b.    <u>Hours Billed by Paralegal Eifert</u>

Paralegal fees can be recovered "only to the extent that the paralegal performs work traditionally done by an attorney," *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982), which includes "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations and drafting correspondence," *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989), but not "clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers," *Johnson v. Georgia Hwy. Exp., Inc.*, 488 F.2d 714, 717 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).

The billing records for Ms. Eifert consist of a string of individual six-minute entries for the "preparation of correspondence" (DE # 153, Ex. B at 30-32). The focus on the inquiry is not, as Plaintiff suggests, whether the work would have been performed by

an attorney in the paralegal's absence; rather, it is whether the work is traditionally performed by attorneys.  The records show that the primary purpose of Ms. Eifert's correspondence was to coordinate scheduling with opposing counsel regarding court dates, depositions and joint filings, which constitute basic communications that are typically handled by legal assistants or paralegals, not lawyers.  In fact, approximately one-third of the entries appear to reflect internal emails that Ms. Eifert sent to her supervising attorney regarding "scheduling issues and procedural matters," which are "'largely clerical or housekeeping matters and not legal work.'"  *Lewallen v. City of Beaumont*, No. 1:05-CV-733-TH, 2009 WL 2175637, at *6 (E.D. Tex. July 20, 2009) (slip op.) (quoting *Speaks v. Kruse*, No. 04-1952, 2006 WL 3388480 (E.D. La. Nov. 20, 2006)); *accord In re Carter*, 894 (Bankr. S.D. Fla. 2005) (reducing fee application for non-compensable paralegal time consisting of "the preparation of correspondence and notices to the debtors and third parties and the preparation for typing of other court papers.").  Therefore, Plaintiff is not entitled to collect attorneys' fees for the 1.8 hours of time billed by paralegal Eifert.

      c.   <u>Redundant Time and Block-Billing</u>

Although Defendants do not support their claim with any specific examples from the comprehensive time records submitted in connection with Plaintiff's fee petition, they argue that the Court should reduce or eliminate any entries that reflect (1) inter-office conferences between Plaintiff's attorneys; (2) duplicative tasks that were completed by more than one attorney; and, (3) any instances of block-billing.  The undersigned finds that Defendant's objections lack the necessary specificity; and, they are largely belied by the record, including the billing records submitted by Plaintiff's counsel, as well as the affidavits submitted by Plaintiff which state that he does not seek

reimbursement for any time entry that is excessive, redundant or unnecessary.

At the outset, the undersigned notes that Defendants were derelict in failing to identify their objections to the amount of hours billed by Plaintiff's counsel with "specific[ity] and 'reasonabl[e] precis[ion],'" *Barnes*, 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301).

As the Eleventh Circuit has recognized, "[t]here is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Norman*, 836 F.2d at 1302. Defendants did not identify any particular instances of duplicative billing; and, based upon a thorough review of the record, the undersigned could not find any examples where it was unreasonable for more than one attorney to contribute to a particular task. In fact, in this case, the delegation of work to attorneys who billed at a lower rate than lead counsel *reduced* the overall amount of attorneys' fees incurred.

Moreover, "[t]ime spent in attorney conferences is generally compensable for each participant" since it is necessary for the attorneys to "spend at least some of their time conferring with colleagues, particularly their subordinates, to ensure that a case in managed in an effective as well as efficient manner." *Am. Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County*, 278 F. Supp. 2d 1301, 1316 (M.D. Fla. 2003) (quoting *Natl'l Ass'n of Concerned Veterans v. Sec'y of Defense*, 675 F.2d 1319, 1337 (D.C. Cir. 1982)). Based upon a review of the record as a whole, the undersigned finds that it is reasonable to include compensation for inter-office conferences in Plaintiff's fee award, because such conferences were sporadic; they were reasonably necessary to ensure that coordinate the work among multiple attorneys; and, when such

conferences occurred, Plaintiff seeks to be reimbursed for only one attorney at a time, not for each of the attorneys that attended the conference.

Finally, the mere fact that an attorney has included more than one task in a single billing entry is not, in itself, evidence of block-billing.  When those tasks are intertwined, including a thorough description of the activities performed clarifies, rather than obscures, the record.  Nevertheless, by complaining generally of block-billing, without substantiating their claim, Defendants have asked the Court to shoulder its burden of scouring the record to find any objectionable billing entries.  The undersigned has undertaken a careful review of the record and finds that it is not necessary to reduce the fee award due to block-billing.  To the contrary, the vast majority of the entries encompass small increments of time and each of those entries describes a single, discrete task; and, where there are multiple entries, those entries are not so vague or confusing that it makes it impossible to determine how the time was spent.

### 4.   Calculating the Lodestar

At this stage in the analysis, it is necessary to pause to compute the lodestar after making the appropriate reductions in the relevant hourly rates and the number of hours expended.  The lodestar equals $108,662.50, based on the following rates and hours:

Mr. Amlong contributes $3,200.00 to the lodestar, for having worked a reduced number of hours (8 hours) at a reduced hourly rate of $400.

Ms. Daley contributes $76,950.00 to the lodestar, for having worked 256.5 hours at a reduced hourly rate of $300 per hour.

Ms. Dolce contributes $1,200.00 to the lodestar, for having worked 4.8 hours at a rate of $250 per hour.

Ms. Nair contributes $16,352.00 to the lodestar, for having worked 0.7 hours at a

rate of $135 per hour and for having worked 92.9 hours at a rate of $175 per hour.

Mr. Botelho contributes $10,935.00 to the lodestar, for having worked 81 hours at a rate of $135 per hour.

Ms. Mosher contributes $25.50 to the lodestar, for having worked 0.3 hours at a rate of $85 per hour.

For the reasons stated above, Ms. Eifert's time (1.8 hours at $85 per hour) is excluded from the lodestar calculation.

     E.    <u>Adjustments to the Lodestar</u>

          1.    <u>The Parties' Positions</u>

Although Defendants do not clearly say so, they implicitly argue that a downward adjustment in the lodestar is warranted in this case based upon the results obtained, in light of the fact that the "Final Judgment obtained by the Plaintiff was fifty percent less than any prior demand made by the Plaintiff's counsel in this case" (DE # 165 at 2).

Plaintiff replies that the requested attorneys' fees are reasonable in light of the particular circumstances of this case (including the necessity to brief three motions for summary judgment, various discovery motions and post-trial motions, as well as to attend in-person hearings and a five-day trial jury trial); and, Plaintiff points out, Defendants have not provided any expert testimony to show that he has requested an unreasonably high amount of attorneys' fees.

          2.    <u>Legal Standards</u>

While the calculation of the lodestar is a necessary component of the fee inquiry, it is not the only component.  As an alternative or in addition to adjusting the number of hours used to calculate the lodestar, the Court may apply an after-the-fact reduction of the lodestar where the plaintiff achieved only partial or limited success, and this is true

"even where the plaintiffs' claims are 'interrelated, non-frivolous and raised in good faith.'"  *Barker v. Niles Bolton Assocs., Inc.*, No. 07-15103, 2009 WL 500719, at *10 (11th Cir. Mar. 2, 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)); *accord Am. Charities*, 278 F. Supp. 2d at 1326.

Thus, the Court retains the authority to review the hourly rate and attorney time for reasonableness based on the 12 so-called "*Johnson* factors," including (1) the time and labor required, (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *See Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1340-41 (11th Cir. 1999) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

Although the nature of the results obtained may result in an upward or downward adjustment of the lodestar, "[f]ee awards should not simply be proportionate to the results obtained," especially in the context of FLSA cases, where it is not uncommon for fee awards to exceed the plaintiff's recovery in order to ensure that individuals with relatively small claims can obtain representation necessary to enforce their rights.  *See James v. Wash Depot Holdings*, 489 F. Supp. 2d 1341, 1347 (S.D. Fla. 2007); *Tyler v. Westway Auto. Serv. Ctr., Inc.*, No. 02-61667-CIV, 2005 WL 6148128, at *5 (S.D. Fla. Mar. 10, 2005).

3.     **Analysis**

Based upon a review of the record as a whole, the undersigned concludes that it is necessary to reduce the lodestar in this case by 10%, in order to account for the limited success achieved by Plaintiff in this case and in order to calibrate the fee award in this case with the awards in other, similar cases.  Thus, Plaintiff is entitled to a final sum of attorneys' fees equal to $97,796.25.

Plaintiff's pre-discovery damage estimate was $39,461.77 (DE # 166 at 5 n.4; DE # 165 at 2).  On June 24, 2008, Plaintiff offered to settle the case for $82,675.77 (consisting of $39,461.77 in damages plus $43,214.00 in attorneys' fees and costs), which Defendants rejected.  On September 23, 2008, Plaintiff made another offer to settle the case, this time for $97,491.60 (consisting of $33,491.60 in damages plus $64,000.00 in attorneys' fees and costs).  Finally, Plaintiff rejected Defendants' October 1, 2008 offer to settle the case for $30,000, inclusive of attorneys' fees and costs (DE # 165 at 2).

And, at trial, Plaintiff argued that he was entitled to $18,850.55 in compensatory damages, although the jury awarded him only $9,095.42, which was doubled pursuant to the liquidated damages provision of the FLSA, resulting in an ultimate recovery of $18,190.84.

Thus, Plaintiff's recovery was approximately half of that which he argued at all stages of this case.  It is this combination of the comparatively limited result obtained as well as the disproportion of the fee request relative to the damage award that militates in favor of a downward adjustment of the lodestar.

In a similar vein, a minor downward lodestar adjustment is warranted to account for the fees incurred in connection with unrelated and unsuccessful claims.  For example, as Plaintiff notes in his reply, he was prepared to assert a discrimination claim

in the early pretrial stages of this case (DE # 166 at 2).  Although some of this time was voluntarily excluded from the fee petition (*see, e.g.,* DE # 153 at 1) (reducing Mr. Amlong's January 15, 2008 billing entry from 3.3 hours to 2.2 hours to account for the discrimination case), it does not appear that this was done consistently.  For example, some of Ms. Daley's billing records contain entries relating to the discrimination claim that includes a notation reading "split time," but there is no clear indication that this notation reflects a voluntary fee reduction (*see, e.g.,* DE # 153 at 1) (billing entries for January 30 and 31, 2008).  *See Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (placing the burden on the fee applicant to set out the time expenditures with "sufficient particularity" to allow the court to evaluate the request).  In addition, there are a small number of billing entries relating solely the claims of another employee, Dean Poole, without an explanation for why the time spent on that case should be reflected in the fee award in this case (*see* DE # 153, Ex. A at 2) (February 26, 2008 entries reflecting 1.1 hours of time for Ms. Daley to hold a "Conference with Dean Poole," as well as 0.7 hours total to "Prepare correspondence to Mr. Poole" and "Prepare correspondence to Mr. Poole confirming he has not yet retained us to represent him").  *See Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983).

In short, this adjusted award accurately reflects the value of attorneys' fees reasonably necessary to achieve the results obtained in this case; and, it is more than sufficient to fulfill the intent of the fee-shifting provision of the FLSA by ensuring that "individuals with relatively small claims" may "effectively enforc[e] their rights and protect[ ] the interest of the public . . . ."  *Tyler v. Westway Automotive Service Ctr., Inc.*, No. 02-61667-CIV, 2005 WL 6148128, at *5 (S.D. Fla. Mar. 10, 2005); *accord James v. Wash Depot Holdings*, 489 F. Supp. 2d 1341, 1347 (S.D. Fla. 2007).

III.    **COSTS**

Plaintiff seeks an award of costs in the amount of $8,637.17, which consists of the filing fee ($256.00), fees for the service of process ($70.00), in-house photocopying expenses ($264.50), outsourced photocopying expenses ($58.49), expenses for photocopying the trial exhibit book ($1,267.50), court reporter attendance fees ($480.00), court reporter transcript fees ($849.10), fees for serving deposition subpoenas ($90.00), witness fees for depositions ($45.00), fees for serving trial subpoenas ($160.00), witness fees for trial ($150.00), court-ordered mediation fees ($325.00), postage costs ($97.94), online research expenses ($378.51), long distance charges ($12.61), telecopier charges ($25.00) and travel expenses ($4,106.52) (DE # 157, Ex. A at 2).  Defendants concede that Plaintiff is entitled to some costs, but contests others, as set forth below.

For the reasons that follow, the undersigned concludes that Plaintiff is entitled to an award of costs in the amount of $3,506.09, which consists of $3,426.09 in uncontested costs and $80.00 in contested photocopying costs.

A.    **Legal Framework for Analysis**

The costs recoverable by prevailing plaintiffs in FLSA cases under section 216(b) are limited to those costs enumerated in 28 U.S.C. § 1920.  *See Glenn v. Gen. Motors Corp.*, 841 F.2d 1567, 1575 (11th Cir. 1988).  Title 28, United States Code, Section 1920 provides:

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

18

**(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;**

**(5) Docket fees under section 1923 of this title;**

**(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.**

28 U.S.C. § 1920. "[A] court may only tax costs as authorized by statute." *U.S. EEOC v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987)).

B.  **Uncontested Costs**

Defendants do not dispute that Plaintiff is entitled to an award of costs in the amount of $3,426.09, which consists of the filing fee ($256.00), the fee for service of process ($70.00), in-house photocopying expenses ($58.49), expenses for photocopying the trial exhibit books ($1,267.50), court reporter attendance fees ($480.00), court reporter transcript fees ($849.10),[5] fees for serving deposition subpoenas ($90.00), witness fees for depositions ($45.00), fees for serving trial subpoenas ($160.00) and

---

[5]  The undersigned notes that these costs consist, in part, of the cost of the ASCII file and the delivery charge ($15.00 each) for the transcripts of Jenna Cannon and Robert Cannon's depositions ($10.00 each) (DE # 158, Ex. A at 4-5). While these expenses are typically incurred for the mere convenience of counsel and therefore not taxable, Defendants have not objected to these costs and the undersigned will not preclude Defendants from conceding that these charges were reasonably necessary for use in this case. *See Suarez v. Tremont Towing, Inc.*, No. 07-21430-CIV, 2008 WL 2955123, at *3 (S.D. Fla. Aug. 1, 2008) ("The costs of ASCII transcripts . . ., in addition to regular transcripts, are *generally* not recoverable absent a showing that they were necessarily obtained for use in the case rather than for the convenience of counsel.") (emphasis added). Thus, the undersigned will not strike these costs (totaling $50.00) *sua sponte*. *See, e.g., Finchum v. Ford Motor Co.*, 57 F.3d 526 (7th Cir. 1995) (affirming award of costs "'incidental' to the taking of the depositions," such as delivery charges).

19

witness fees for trial ($150.00) (DE # 165 at 7).[6]  Based upon a review of the record as a whole, the undersigned agrees that these costs encompass expenses that were necessary for use in this case and are statutorily authorized under 28 U.S.C. § 1920.

C.    Contested Costs

Defendants object to $5,210.08 in costs, which consist of the categories of expenses discussed in more detail below.  The undersigned concludes that Plaintiff is entitled to a reduced award of $80.00 worth of in-house photocopying expenses (and not $264.50 as requested); but, Plaintiff is not entitled to tax the costs of mediation, postage, online research, long distance telephone, telecopying, and travel expenses (a total of $4,945.58).

1.    In-House Photocopying Expenses

Defendants object to $264.50 worth of in-house photocopying expenses, based on their assertion that Plaintiff has not satisfied his burden of showing that the photocopies were necessarily obtained for use in this case, rather than for the convenience of counsel (DE # 165 at 7).  As Plaintiff explains in his reply, he inadvertently neglected to file the detailed summary of the in-house photocopying expenses incurred by his counsel, although he filed it for the first time as an exhibit to his reply brief (DE # 166 at 5 & Ex. E).[7]

_____

[6]  With regard to the witness fees for depositions and trial, the record reflects that the witness fees appear to exceed the statutory maximum of $40.00 per witness per day; but, because Defendants have not objected to these costs, the undersigned will assume that the $50.00 per day witness fees incorporate the costs of travel pursuant to 28 U.S.C. § 1821.

[7]  The only supporting documentation regarding these costs that was filed in connection with his initial motion were the affidavits of Mr. Amlong and Ms. Daley, which explain the general office policy to charge 25 cents for page for photocopies; and, which identify various categories of documents that the law firm typically photocopied in

The undersigned concludes that it is necessary to reduce the amount of photocopying expenses by approximately two-thirds, from $264.50 to $80.00, for the following reasons:

First, Plaintiff's calculation of photocopying costs is based on an inflated rate of 25 cents per page.  Earlier this year, this Court rejected a request for reimbursement of 19 cents a page, based on its conclusion that a rate of 10 to 14 cents per page was more reasonable based upon its review of other recent cases in this Circuit.  *Monelus v. Tocodrian, Inc.*, 609 F. Supp. 2d 1328, 1336 (S.D. Fla. 2009); *accord James v. Wash Depot Holdings, Inc.*, 242 F.R.D. 645, 651 (S.D. Fla. 2007) (taxing photocopies at a rate of 10 cents per page and finding that the requested rate of 15 cents per page was "unnecessarily high").  Decreasing the rate per page from 25 cents per page to 10 cents per page translates into a reduction of copying costs from $264.50 to $105.80.

Furthermore, Plaintiff failed to attach the complete set of records to his initial motion, depriving Defendants of the opportunity to examine the detailed summary necessary to determine whether the particular documents were necessarily copied for use in this case.  *See Monelus*, 609 F. Supp. 2d at 1335 ("As the prevailing party alone knows the purpose of the copies, it cannot simply make unsubstantiated claims that copies of the documents were necessary.").

The undersigned has reviewed the untimely-filed records and finds that at least some of the photocopies were necessarily obtained for use in the case; and, they are

similar cases – i.e., pleadings and other court papers, correspondence, and the like (DE # 151 at 7; DE # 153 at 8).

21

therefore taxable under the FLSA and 28 U.S.C. § 1920.[8]  Thus, rather than excluding these costs altogether based on Plaintiff's failure to file the necessary paperwork in a timely manner, the undersigned will impose an additional reduction to account for the fact that not all of the photocopying expenses requested by Plaintiff are reimbursable and the fact that Defendants did not have the records required to raise a substantive objection.  For example, the undersigned is unaware of any authority permitting the taxation of photocopying costs incurred in order to send unsolicited courtesy copies of documents directly to chambers, when those documents have been electronically filed with the Court (*see, e.g.,* DE # 166, Ex. E at 2-3) (charging $39.25 for copying 157 pages on June 2, 2008 and $10.75 for copying 43 pages on June 19, 2008, in connection with two separate motions for sanctions).

           2.     <u>Mediation, Postage, Online Research, Long Distance Telephone, Telecopy and Travel Expenses</u>

Defendants also object to $4,945.58 in costs associated with court-ordered mediation ($325.00), postage ($97.94), online research ($378.51), long distance telephone costs ($12.61), telecopier charges ($25.00) and travel expenses ($4,106.52) (DE # 165 at 7).  While Plaintiff expressly acknowledges that this Court has denied costs for mediation, postage and online research on more than one occasion, he nevertheless requests "that they be awarded as part of the attorneys' fees awarded in this case, especially with respect to the court-ordered mediation conference;" and, he notes that "the travel expenses related to trial were necessary for Plaintiff's counsel to timely attend the trial proceedings and prepare for them" (DE # 166 at 4-5).

---

[8]  Photocopies made "for the purpose of correspondence with opposing counsel and filing documents with the Court are recoverable."  *Monelus v. Tocodrian, Inc.*, 609 F. Supp. 2d 1328, 1335 (S.D. Fla. 2009)

There is an apparent split of authority regarding the manner in which such expenses are treated in the context of an FLSA case.  On one hand, there are some cases favorable to Defendants in which these expenses are considered "costs" which are not taxable under 28 U.S.C. § 1920 because they are not specifically enumerated in the statute.  *See Bartle v. RX Options, Inc.*, No. 08-60533-CIV, 2009 WL 1035251, at *3 (S.D. Fla. Apr. 16, 2009) (prohibiting recovery of costs associated with postage, computerized research, mediation and long distance); *Global Patent Holdings, LLC v. Panthers BRHC LLC*, No. 08-80013-CIV, 2009 WL 1809983, at *3 (S.D. Fla. June 25, 2009) (telecopy costs); *Gary Brown & Assocs., Inc. v. Ashdon, Inc.*, 268 Fed. Appx. 837, 845-46 (11th Cir. Mar. 7, 2008) (travel expenses).

On the other hand, there are other FLSA cases that are favorable to Plaintiff in which these expenses are considered "litigation expenses" – not "costs" – that are recoverable as part of the attorneys' fee award.  *See Hart v. Lindgren-Pitman, Inc.*, No. 06-60285-CIV, 2008 WL 4265050, at *9 (S.D. Fla. July 31, 2008) (citing *Wales v. Jack M. Berry, Inc.*, 192 F. Supp. 2d 1313, 1329 (M.D. Fla. 2001)); *Calderon v. Witvoet*, 112 F.3d 275, 276 (7th Cir. 1997) ("[O]utlays for travel and related expenses" are reimbursable "as part of the award for attorneys' fees, because" such charges "are the sort of things that a lawyer includes with a bill for professional services.").

The undersigned concludes that Defendants have the better of this argument. First, the cases upon which Plaintiff relies – namely, *Hart* and *Wales* – are in tension with the binding precedent established by the Eleventh Circuit in *Gary Brown & Assocs., Inc. v. Ashdon, Inc.*, 268 Fed. Appx. 837, 845-46 (11th Cir. Mar. 7, 2008), where the Eleventh Circuit denied a prevailing party's request for mediation expenses, meals, postage, online research, travel and lodging because those costs are not recoverable under 28

23

U.S.C. § 1920; and, neither Plaintiff's briefs, nor the cases cited therein, adequately resolve that tension, but instead rely primarily on Seventh Circuit precedent.

Second, the *Wales* decision that is cited by Plaintiff appears to be an outlier in this Circuit, because the majority of Courts to have considered the matter have found that expenses related to mediation, postage, online research, long distance telephone calls, telecopying and attorney travel are "costs" and not recoverable pursuant to the FLSA because they are not specifically enumerated under section 1920. *See, e.g., Ward v. Parks Elec. Co.*, No. 6:08-cv-1111-ORL-19KRS, 2009 WL 1684455, at *2 (M.D. Fla. June 16, 2009) (travel expenses); *Rodriguez v. Fuji Sushi, Inc.*, No. 6:08-CV-1869-ORL-2KRS, 2009 WL 1456444, at *4 (postage and travel expenses); *Turcios v. Delicias Hispanas Corp.*, No. 07-20150-CIV, 2009 WL 13932398, at *5 (S.D. Fla. May 14, 2009) (court-ordered mediation); *Gerhardt v. Fine Line Collision, Inc.*, No. 08-14253-CIV, 2008 WL 5054098, at *3 (S.D. Fla. Nov. 26, 2008) (travel, telephone and computer research); *Armitage v. Dolphin Plumbing & Mech., LLC*, No. 6:05-CV-890-ORL-19KRS, 2207 WL 2209234, at *4 (M.D. Fla. July 30, 2007) (facsimiles, long distance, computerized research, attorney travel and lodging, postage, attorney meals, and mediation fees); *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, No. 6:05-CV-269-ORL-28JGG, 2007 WL 842771, at *10 (postage, legal research, attorney meals, hotel and travel).

Third, although Plaintiff cites an Eleventh Circuit case, *Cullens v. Georgia Dept. of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994), for the notion that "long distance telephone charges and travel expenses are appropriate expenses" (DE # 156 at 11), courts have since pointed out that *Cullins* is limited to civil rights actions under 42 U.S.C. § 1988, and not requests for costs under 28 U.S.C. § 1920. *Kemberling v. Metlife Life and Annuity Co. of Connecticut*, No. 8:06-CV-1741-T-23MAP, 2008 WL 1995080, at *1 n.2 (M.D. Fla. May

6, 2008) (citing *Lovett v. KLLM, Inc.*, No. 4:05-CV-026-RLV, 2007 WL 983192, at *5 (N.D. Ga. Mar. 26, 2007)).  Likewise, *Johnson v. Univ. College of Univ. of Alabama*, 706 F.2d 1205, 1209 (11th Cir. 1983), which Plaintiff cites in support of its proposition that "computerized research costs may be recoverable" (DE # 156 at 11-12) is also a civil rights case and, thus, inapposite.

The undersigned is cognizant of the policy rationale animating the cost-shifting provisions of the FLSA, which are designed to fully reimburse lawyers as an incentive to encourage them to represent FLSA plaintiffs.  Nevertheless, the Court is limited in its authority to award litigation costs that fall outside the scope of 28 U.S.C. § 1920, *see Glenn v. General Motors Corp.*, 841 F.2d 1567, 1575-76 (11th Cir. 1988); and, moreover, the total fee and cost award in this case – $108,259.84 – accurately reflects the amount of attorneys' fees reasonably necessary to achieve the results obtained by Plaintiff's counsel, as well as the amount necessary to fulfill the intent of the fee-shifting provision of the FLSA by ensuring that "individuals with relatively small claims" may "effectively enforc[e] their rights and protect[ ] the interest of the public . . . ." *Tyler v. Westway Automotive Service Ctr., Inc.*, No. 02-61667-CIV, 2005 WL 6148128, at *5 (S.D. Fla. Mar. 10, 2005).

IV.    UNDERLINED SUPPLEMENTAL ATTORNEYS' FEES

In his reply, Plaintiff requests an additional award of attorneys' fees in the amount of $7,845.00 for supplemental attorney time incurred in connection with the underlying motion for attorneys' fees and costs (DE # 166 at 6).  This sum consists of 22.8 hours of attorney time for Ms. Daley at a rate of $325 per hour (for a total of $7,410.00); 1.9 hours of attorney time for Ms. Nair at a rate of $175 per hour (for a total of $332.50); and 0.3 hours of attorney time for Mr. Amlong at a rate of $450 per hour (for a total of $135.00)

(DE # 166, Ex. F at 6).  The undersigned concludes that Plaintiff is entitled to a reduced supplemental fee award of $6,957.50.

First, for the reasons stated above, a reasonable hourly rate for Ms. Daley is $300, not $325 as requested; and, a reasonable hourly rate for Mr. Amlong is $400, not $450 as requested.

Second, the number of hours requested by Ms. Daley are excessive and therefore must be reduced from 22.8 hours to 22.5 hours.  Specifically, she electronically filed three exhibits to the motion for attorneys' fees and costs and recorded them as three separate entries of 0.1 hours each on April 13, 2009.  A reasonable amount of time to file these documents is 0.1 hours, not 0.3 hours (DE # 166, Ex. F at 2).  In addition, a April 30, 2009 time entry for Ms. Daley reads, "No charge: Receive and respond to e-mail from opposing counsel re: defendants' motion for extension;" however, this charge was not excluded from Plaintiff's computation of supplemental attorneys' fees and this 0.1 hour of attorney time will be excluded from the Court's calculation (DE # 166, Ex. F at 3).

Third, the number of hours requested by Ms. Nair are excessive and therefore must be reduced from 1.9 hours to 0.5 hours.  Ms. Nair billed for 1.8 hours of attorney time on April 10, 2009 to draft and file a motion for extension of time to file the expert affidavit in support of Plaintiff's fee petition that contains only two pages of text and no legal analysis, as well as a one-page proposed order granting the motion for an extension of time.  And, she billed an additional 0.1 hour of attorney time to receive and review the Court's brief paperless Order granting the motion, which was issued the same day (DE # 166, Ex. F at 6).  Because 0.5 hours is a generous estimate of the reasonable amount of time necessary to complete these tasks, Plaintiff's fee request must be adjusted accordingly.

After carrying out the necessary reductions, Plaintiff is entitled to a supplemental award of attorneys' fees in connection with the underlying motion for attorneys' fees and costs in the amount of $6,957.50, based on the $6,750.00 incurred by Ms. Daley (22.5 hours at $300 per hour); the $87.50 incurred by Ms. Nair (0.5 hours at $175 per hour); and, the $120.00 incurred by Mr. Amlong (0.3 hours at $400 per hour).

## V.   PLAINTIFF'S MOTION TO STRIKE AND PLAINTIFF'S REQUEST TO GRANT MOTION FOR ATTORNEYS' FEES AND COSTS BY DEFAULT

On April 13, 2009, Plaintiff filed the instant motion for attorneys' fees and costs (DE # 156).  Defendants failed to file a response for over two months; and, thus, on June 24, 2009, Plaintiff requested that the Court grant his motion for attorneys' fees and costs by default (DE # 164).  The next day, Defendants' finally responded to the original motion (DE # 165); and, Plaintiff filed a timely reply (DE # 166).  It was not until after Plaintiff filed his reply did Defendants file the affidavit of Leslie W. Langbein, Esq., in which she states, among other things, that the fee petition contains "duplicative, unnecessary, and excessive" time entries (DE # 168).  Notably, the affidavit is rife with generalities and does not offer an opinion as to a reasonable number of hours, a reasonable hourly rate or a reasonable lodestar adjustment.  Plaintiff moved to strike the affidavit as untimely (DE # 169); and, Defendants have yet to respond, although the deadline for doing so has passed.

The undersigned agrees with Plaintiff that the affidavit of Ms. Langbein is untimely and should be stricken.  As stated above, Defendants filed this affidavit after Plaintiff filed a reply in support of the underlying motion for attorneys' fees and costs. There is no opportunity for further briefing regarding the motion to which this affidavit relates; and, therefore, it would both be prejudicial to Plaintiff and ill-serve the interests

of judicial economy to permit additional briefing, especially when Defendants have failed to respond to the motion to strike and have failed to offer a rationale establishing good cause to justify their untimeliness.

As a final note, the undersigned acknowledges that Plaintiff is correct to point out that Defendants failed to file a timely response to his underlying motion for attorneys' fees and costs (DE # 164).  Nevertheless, given the context of this case as a whole, it is preferable to address the merits of this fee petition rather than granting it by default. *See Galvez v. Cuevas*, No. 08-80378-CIV, 2009 WL 1024632, at *2 (S.D. Fla. Apr. 15, 2009) (declining to grant motion for attorneys' fees and costs by default because "courts are not permitted to be generous with the money of others.").  Therefore, based upon a review of the record as a whole and for the reasons stated above, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Attorneys' Fees and Costs (DE # 156) is **GRANTED IN PART AND DENIED IN PART**.  Plaintiff shall be granted an award of attorneys' fees ($97,796.25), supplemental attorneys' fees ($6,957.50) and costs ($3,506.09) in the amount of $108,259.84.  It is further

**ORDERED AND ADJUDGED** that Plaintiff's Motion to Strike as Untimely Declaration of Leslie Langbein, Esq. (DE # 169) is **GRANTED.**  It is finally

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Entry of an Order

Granting by Default Plaintiff's Motion for Attorneys' Fees and Costs (DE # 164) is

**DENIED AS MOOT**.

**DONE AND ORDERED** in chambers in Miami, Florida on August 27, 2009.

_Andrea M. Simonton_

**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

Copies furnished to:
All counsel of record

29